UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent, | ) |
| | ) |
| vs. | ) Nos. 2:08-CR-102(1) |
| | ) 2:14-CV-84 |
| JESUS HUERTA, | ) |
| | ) |
| Petitioner. | ) |

**MEMORANDUM AND ORDER**

Petitioner Jesus Huerta ("Huerta" or "petitioner") has filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 [Doc. 1417]. The United States has responded to the motion, objecting to Huerta's requested relief [Doc. 1421]. The matter is now ripe for consideration. The Court has determined that the files and records in the case conclusively establish that the petitioner is not entitled to relief under § 2255 and, therefore, no evidentiary hearing is necessary. For the reasons set forth herein, petitioner's § 2255 motion lacks merit and will be DENIED and the case (No. 2:14-CV-84) DISMISSED.

**I.    BACKGROUND**

On February 10, 2009, a federal grand jury returned an indictment charging thirty-three defendants with multiple drug and firearms charges. [Doc. 228, *Second Superseding Indictment*]. In Counts One and Two, Huerta was charged with a conspiracy to manufacture marijuana in violation of 21 U.S.C. § 846 (Count One), and possessing a firearm in furtherance of the drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A)(Count Two). In Counts Three and Seven, Huerta was charged with a conspiracy to distribute and possess with the intent

1

to distribute 1,000 kilograms or more of marijuana (Count Three), and possessing, or aiding and abetting the possession of, multiple firearms in furtherance of the drug trafficking offense (Count Seven). On January 4, 2010, the Court dismissed Count Two on the government's motion, leaving only Counts One, Three and Seven for trial [Doc. 865, *Order*].

On January 6, 2010, Huerta, along with six other co-defendants proceeded to a trial by jury [Doc. 872, *Courtroom Minutes*]. Huerta was convicted of conspiracy to manufacture marijuana (Count One) and conspiracy to distribute marijuana (Count Three), but was acquitted of the firearms charge (Count Seven) [Doc. 916]. After the Court granted Huerta a new trial on Count One [Doc. 1268], the government moved to dismiss that count without prejudice [Doc. 1269]. The Court dismissed Count One, which left only Count Three for sentencing.

The United States Probation Office found Huerta responsible for 1,301 kilograms of marijuana, resulting in a corresponding base offense level of 32 [PSR ¶ 23, 29]. It also found that Huerta possessed a firearm in connection with a drug trafficking crime, under Section 2D1.1(b)(1) of the United States Sentencing Guidelines ("USSG"), and increased his offense level by two levels, to level 34.[1] [*Id.* at ¶ 30]. Huerta's criminal history was category II, resulting in an advisory guideline range of 168 to 210 months' imprisonment [*Id.* at ¶ 29, 30, 34, and 45]. Given the offense of conviction, the PSR noted that he was subject to a mandatory minimum of ten years' imprisonment [*Id.* at ¶ 62].

Both the government and Huerta filed objections to the PSR. The government objected to the failure of probation to enhance the offense level based on Huerta's role in the offense, arguing that he was, under Section 3B1.1, an organizer or leader of criminal activity that involved five or more participants [Doc. 1322, *Transcript of Sentencing Hearing,* pg. 28].

---

[1] USSG § 2D1.1(b)(1) provides that "[i]f a dangerous weapon (including a firearm) was possessed, increase by 2 levels."

Huerta objected to the firearms enhancement under Section 2D1.1(b)(1). The government also presented evidence of alternative bases to support the firearm enhancement under Section 2D1.1(b)(1) of the Guidelines.

Prior to sentencing, the Court conducted an evidentiary hearing that spanned three days. On the first day, the government called William Bradford, an inmate who had pled guilty to a drug conspiracy charge, and who claimed to have provided Huerta a firearm [Doc. 1322, *Transcript,* at 30]. Bradford testified that he had provided Huerta a Sig 9 millimeter sometime in July or August 2008. [Doc. 1322, *Transcript of Sentencing hearing*, at 39-40]. Huerta's counsel moved the Court to continue the sentencing hearing as he claimed he did not have any notice of this witness and needed additional time to prepare to cross-examine effectively his testimony. The Court granted that request and continued the sentencing hearing [*Id.* at 57].

On the second day of the sentencing hearing, Huerta's counsel cross examined Bradford about his allegations. At that hearing, Bradford again testified that Huerta took the gun with him to Gatlinburg and left it in "Mundo's" RV and that Huerta eventually recovered the firearm [Doc. 1323, *Transcript*, at 40]. At the conclusion of Bradford's testimony, Huerta's counsel objected to the Court even considering Bradford's testimony regarding the firearm [Doc. 1323, *Transcript*, at 46-49]. The Court denied that request and continued the hearing to a third day.

On the third day, Huerta took the stand and testified about his role in the conspiracy. [Doc. 1324, *Transcript*, at 4]. He denied he had any managerial or supervisory role in the offense. He claimed he had no control over anyone [*Id.* at 26-27]. He also denied ever possessing a firearm and disputed Bradford's account that Bradford had given him a Sig 9 millimeter firearm. [*Id.* at 50-52, 116]. He also denied knowing anything about the firearms or ammunition that were found at his residence on 750 Georgia Street [Doc. 1324, at 93-94, 112-

3

13]. In rebuttal, the Government called Lt. William Gregg, who testified that 9 millimeter ammunition was found at Huerta's home [Doc. 1324, at 129].

The Court noted that Probation applied the firearm enhancement because it found that "it was reasonably foreseeable to … Huerta that a firearm would be possessed in connection with the offense." [*Id.* at ¶ 30]. Probation noted that "[w]hen Wiley Barnett was arrested after the traffic stop on September 23, 2008, a loaded .45 caliber handgun was found inside one of the bags of marijuana. On September 23, 2008, Jesus Huerta told Esquivel-Jaimes to 'be sure to bring the pistol out with the marijuana.' Esquivel-Jaimes placed the firearm in his backback." [*Id.* at ¶ 30]; [Doc. 1324, at 134].

The government argued that the enhancement was also supported by the trial testimony of Jeremy Bennett, who testified that he had traded Huerta a shotgun with a "loose stock" in exchange for marijuana. [Doc. 1325, pg. 134]. In fact, a shotgun with a loose stock was found at Huerta's residence. The government also argued the Bradford's testimony supported the application of the firearm enhancement. *Id.* at 134-35.

In ruling on the objections, the Court found that the firearm cited in the PSR was not connected to the offense of conviction. Count One had been dismissed. *Id.* at 141. However, the Court found that both Jeremy Bennett's trial testimony and Bradford's testimony at the sentencing hearing were adequate to support the firearm enhancement. Bennett had testified that he sold Huerta a Mossberg 12-gauge shotgun for a half pound of marijuana, and a 9 millimeter handgun with an extended clip in 2007. [Doc. 1324, at 154]. The Court made the following observation:

> [Huerta's counsel] argues that at best Mr. Bennett is no more credible than Mr. Huerta. The Court disagrees. I have previously found based upon my observations of Mr. Bennett at trial, based upon my own evaluation of his credibility, based on his demeanor

4

> at trial and the answers to the question that he gave at trial that his testimony was truthful….I find Mr. Bennett's testimony that he traded this shotgun to Mr. Huerta for marijuana; that he sold him a handgun for $250 to be credible….Certainly Mr. Bennett's testimony is sufficient to establish by a preponderance that Mr. Huerta possessed both the shotgun and the pistol.

[Doc. 1324, at 155-56].

The Application Note to Section 2D1.1(b)(1) provides that the "enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." USSG § 2D1.1, cmt., n. 11. The Court noted that once the government showed a weapon was present, Huerta had to demonstrate that "it [was] clearly improbable that the firearm was possessed in connection with the offense." Instead of addressing that issue, Huerta simply denied ever possessing the firearms. The Court found that Bennett's testimony that Huerta had traded a firearm for marijuana was credible and that alone was sufficient to establish a connection with the offense. *Id.* at 156. The Court also found Bradford's testimony that he had traded a firearm to Huerta to reduce his drug debt to be credible, which also served as an independent basis to support the firearm enhancement. *Id.* at 157. The Court did not find Huerta's denials persuasive. *Id.* at 157.

The Court then addressed the application of Section 3B1.1, Huerta's role in the offense.[2]

---

[2] Section 3B1.1 provides as follow:

> Based on the defendant's role in the offense, increase the offense level as follows:
>
> **(a)** If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.
> **(b)** If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.
> **(c)** If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

5

> Mr. Huerta's involvement in this conspiracy, while to some degree not completely defined, is nevertheless very significant. He was clearly not at the top of the conspiracy in terms of culpability, nor was he at the bottom…. I don't think there's any question here that Mr. Huerta exercised supervisory or managerial authority over others. I don't think there's any question about that. That's not even a close question.

*Id.* at 184-85. As a result of finding Huerta a "manager or supervisor," under Section 3B1.1(b), the Court increased Huerta's offense level by three levels to level 37 with a corresponding advisory guideline range of 235 to 293 months. *Id.* The Court concluded that a sentence within the range would be greater than necessary to satisfy the factors set forth in 18 U.S.C. § 3553(a), and thus imposed a below Guidelines sentence of 192 months' imprisonment [*Id.* at 215-30; Doc. 1282, *Judgment*].

On direct appeal, Huerta challenged the denial of his motion for mistrial as well as the propriety of the firearm enhancement. The Sixth Circuit affirmed both his conviction and sentence. *United States v. Blake-Saldivar*, 505 Fed. App'x 400, 416-17 (6th Cir. 2012). The United States Supreme Court denied certiorari on March 18, 2013 [Doc. 1392-93]. Huerta subsequently filed this timely § 2255 motion. In his motion, Huerta asserts that counsel was ineffective for not objecting to the two enhancements imposed during sentencing.

## II.     STANDARD OF REVIEW

A prisoner in federal custody may file a motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255 "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." The relief authorized by 28 U.S.C. § 2255 "does not encompass all claimed errors in conviction and sentencing." *United*

*States v. Addonizio*, 442 U.S. 178, 185 (1979). Rather, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law … so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006)(quoting *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)). He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

### III. ANALYSIS

#### A. Huerta's Ineffective Assistance Claim regarding the challenge to the Firearm Enhancement under USSG § 2D1.1(b)(1).

USSG § 2D1.1(b)(1) requires sentencing courts to increase the defendant's sentence by two levels "[i]f a dangerous weapon (including a firearm) was possessed." USSG § 2D1.1(b)(1) (2010). The sentencing court is instructed to apply the two-level enhancement when a weapon is present, "unless it is clearly improbable that the weapon was connected with the offense." USSG § 2D1.1, cmt. n. 11(A). The government bears the burden of showing by a preponderance of the evidence that the defendant either "actually or constructively possessed the weapon." *United States v. Hough*, 276 F.3d 884, 894 (6th Cir.), *cert. denied*, 535 U.S. 1089 (2002). "Constructive possession of an item is the ownership, or dominion or control over the item itself, or dominion over the premises where the item is located." *United States v. Hill*, 79 F.3d 1477, 1485 (6th Cir.), *cert. denied*, 519 U.S. 858 (1996) (citation and internal quotations omitted). Once the government meets its burden of showing that the defendant possessed a weapon, a presumption arises that "the weapon was connected to the offense." *Hough*, 276 F.3d at 894. The burden then shifts to the defendant to "show that it was 'clearly improbable' that the weapon was connected

7

with the crime." *Id.* The district court applies the two-level enhancement if the defendant fails to meet this burden. *United States v. Miggins*, 302 F.3d 384, 391 (6th Cir.), *cert. denied*, 537 U.S. 1097 (2002); *see also United States v. Darwich*, 337 F.3d 645, 665 (6th Cir. 2003).

Huerta first asserts that counsel was ineffective for failing to challenge the two-level enhancement he received for possession of a firearm under USSG § 2D1.1(b)(1). But that is exactly what three days of sentencing were all about. Bradford testified that he had given Huerta a firearm in connection with the offense. Huerta testified that Bradford had not. The Court also noted the trial testimony of Bennett, who also claimed that he had provided a firearm in exchange for a reduction of his drug debt he owed Huerta. Thus, the issue was whether the Court would credit Huerta's testimony that he did not possess any firearms or Bennett's and Bradford's testimony that he had.

To be sure, the Court found that the facts relied on by Probation did not support the enhancement. But the Court credited the testimony of both Bennett and Bradford and found that the government had proven by a preponderance of the evidence that Huerta possessed a firearm at other times and on other occasions than relied upon by Probation. Huerta claims that because he was acquitted of the firearms count, the Court should not have applied the firearms enhancement. First, the standards that the Court applies are different. The Court need only find by a preponderance of the evidence that Huerta possessed a firearm, not beyond a reasonable doubt. *Hough*, 276 F.3d at 894. Secondly, the enhancement by its own terms applies if the Court finds the defendant possessed a firearm, regardless of whether he was charged with a 924(c) violation. That Huerta argues the Court should not have credited the testimony of Bennett or Bradford is not a basis to set aside the sentence.

8

Case 2:08-cr-00102-JRG-MCLC Document 1474 Filed 02/13/17 Page 8 of 13 PageID #: 10663

Huerta also claims his counsel should have asked for a continuance. But that is exactly what happened. His counsel asked for additional time to prepare to cross-examine Bradford, and the Court granted him additional time.

Huerta's counsel objected to the firearm enhancement and challenged it on appeal. Thus, Huerta cannot show any deficient performance by his counsel. His counsel cannot be constitutionally ineffective for performing in exactly the manner that Huerta claims he should have. Accordingly, Huerta has presented no basis for the Court to find his counsel was deficient under *Strickland*, as counsel did everything that Huerta claims that he should have.

As noted, counsel even challenged the Court's ruling in the Sixth Circuit. The Sixth Circuit noted "Huerta . . . argues that, at sentencing, the trial court erred in applying a two-level firearm enhancement under United States Sentencing Guidelines § 2D 1.1(b)(1), which contributed to a sentence above the mandatory minimum." *Blake-Saldivar*, 505 F. App'x at 407. The Sixth Circuit noted that "Huerta argues that the testimony supporting his firearm enhancement was not credible and that because Bradford's testimony regarding the Sig nine-millimeter was not mentioned in Huerta's presentence report, it should not have been considered by the district court." *Id.* at 418. This is exactly the argument he is making now in his § 2255 motion. As the Sixth Circuit noted, "[e]ven if Bennett, the primary witness connecting Huerta to the shotgun and nine-millimeter handgun, was not the most credible witness, his testimony was supported by the physical evidence of the guns that were found buried at 750 Georgia Street." *Id.* That was sufficient to find that Huerta possessed a firearm during a drug-trafficking offense. Accordingly, this ground for relief is without merit.

**B.     Huerta's Ineffective Assistance of Counsel claim regarding his role in the offense under USSG § 3B1.1(b).**

Huerta also asserts that counsel was ineffective for not challenging the managerial enhancement. He contends no audio or video evidence exists to show he was a manager nor did any law enforcement officer testify that they heard or saw him behaving as a manager.

As an initial matter, the Court notes that sentencing challenges that are not made on direct appeal are generally waived and cannot be raised for the first time in a § 2255 motion. *Cole v. United States*, No. 10-4029, 2013 WL 6068030, at *1 (6th Cir. Jan. 25, 2013); *see Weinberger v. United States*, 268 F.3d 349, 351 (6th Cir. 2001). A failure to raise a claim on direct appeal results in a procedural default of that claim. *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001). However, sentencing challenges are permitted for review as part of a subsequent ineffective assistance of counsel claim. *Id.*

Huerta failed to raise his concern regarding his managerial role enhancement on direct appeal to the Sixth Circuit. However, this sentencing challenge is part of an ineffective assistance of counsel claim. Thus, the claim is not automatically defaulted. While he asserts counsel failed to challenge this enhancement, trial counsel did, in fact, object to its application. Huerta even testified at sentencing that he did not have any control over anyone in the conspiracy. His testimony directly addressed the enhancement for his role in the offense under USSG § 3B1.1. Furthermore, during sentencing, counsel argued that other co-defendants, in fact, directed and managed the conspiracy as opposed to Huerta. [Doc. 1324, pg. 169-76]. Again, although law enforcement did not testify to witnessing Huerta's actions, no requirement of this sort exists nor does Huerta cite to any. Accordingly, Huerta has presented no basis for deficient performance under *Strickland*, as counsel did everything that Huerta claims he should have done.

10

Furthermore, Huerta has not shown any prejudice from failing to raise this issue on appeal. The evidence was sufficient to demonstrate Huerta played a managerial role in the conspiracy. A defendant need only oversee one other participant for the enhancement to apply. USSG § 3B1.1, cmt., n.2. The Guidelines identify several factors to assist courts in distinguishing "a leadership and organizational role from one of mere management or supervision." *Id.*, cmt., n.4. Those factors include "the exercise of decision-making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." *Id.* More than one person in a conspiracy can receive a role enhancement. *Id.* Huerta's counsel objected to enhancing Huerta's level for his role in the offense.

It is clear that evidence from numerous sources indicated Huerta directed multiple individuals within the conspiracy and was engaged to some degree in the planning and organization. The Court heard weeks of trial testimony regarding Huerta's involvement in this conspiracy. The evidence that Huerta's role in the offense warranted an enhancement was overwhelming. At sentencing, the Court noted as such:

> The evidence in this case clearly establishes that Mr. Huerta was a distributor of drugs to a number of people, by his own admission at least three people: Carlos Hernandez … Jonathan Shell and Victor Hugo Vizcarra-Lopez, all of whom were distributing drugs obtained from Mr. Huerta to others…. He was fronting the marijuana to those people. … Why is that significant? … It is significant because that requires him to exercise at least some oversight over what they're doing in order to protect his investment; and not only that, it means that the more successful they are in selling marijuana, the more successful Mr. Huerta is…. And with respect to those involved here in Tennessee, maybe

11

> throughout the entire conspiracy, the common thread in all of this is Jesus Huerta.
>
> The proof in this case also establishes that Mr. Huerta used other people to deliver and to transport marijuana; that he used other people to deliver it; that he used other people to wire proceeds from it….Johnathan Shell … testified unequivocally that … Huerta … directed him to transfer by wire money in payment of marijuana they had obtained. He did that at [his] direction.
>
> …
>
> The proof in this case also establishes that Mr. Huerta engaged others to store marijuana for him. Marijuana was stored at Melody Bailey's house at his request, at his direction. She testified that she was paid to do that…. We heard testimony from Mr. Bradford that marijuana was dried and stored in his attic that came from Mr. Huerta…. Mr. Huerta directed others to deliver, not just by wire, but to personally deliver proceeds of drug trafficking in payment of … marijuana obtained.

[Doc. 1324, at 180-83]. Even by Huerta's own admission, he recruited one accomplice into the conspiracy. *Id.* at 184. The Court gave Huerta the benefit of the doubt and found he "was a manager or supervisor, but not an organizer or leader in the criminal activity involved…." *Id.* at 185. Huerta has provided no proof that any of this evidence was false or to prove that the Court's application of this enhancement was erroneous. Accordingly, Huerta cannot demonstrate any prejudice from counsel's behavior, and thus this claim for ineffective assistance is without merit.

### IV. CONCLUSION

The Court finds that Petitioner has failed to demonstrate that he is entitled to relief under § 2255 and his motion to vacate, set aside or correct the sentence [Doc. 1417] will be DENIED. This action will be DISMISSED.

The Court now must consider whether to issue a certificate of appealability (COA) should the Petitioner file a notice of appeal, since he may not appeal a final order in a § 2255

case to the Sixth Circuit unless "a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1). Issuance of a COA depends on whether Petitioner has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

The Court will CERTIFY that any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will DENY Petitioner leave to proceed *in forma pauperis* on appeal. See Rule 24 of the Federal Rules of Appellate Procedure. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability SHALL NOT ISSUE. 28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure.

AN APPROPRIATE ORDER WILL ENTER.

SO ORDERED:

s/J. RONNIE GREER  
UNITED STATES DISTRICT JUDGE